# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| v. | : | Criminal No. 20-CR-104 (RC) |
| | : | |
| **JERRITT JEREMY PACE** | : | |
| | : | |
| **Defendant.** | : | |

## UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Opposition to Defendants "Motion to Dismiss" (Docket Entry 27) (hereinafter "Def. Motion"). The bases for the United States' Motion are as follows:

## RELEVANT FACTS

At approximately 2:43 a.m. on May 29, 2020, Defendant posted a link on his Facebook page to a news story reporting that the Minneapolis Police Department Third Precinct station had been set on fire during protests over George Floyd's killing.[1] Exhibit One. In the "Comments" section associated with this link Defendant stated "id love to burn a 12 station[2] to the ground!! burn bitch!!" Id. A short time later, Defendant later added another comment stating, "I WILL BURN A 12 STATION DOWN SO QUICK IF THIS COMES TO MY TOWN.....PLEASE

---

[1] These statements were taken from Defendant's publicly-available Facebook page, for which Law Enforcement later obtained a search warrant.

[2] As Defendant concedes, "12" is common street slang for law enforcement. Def. Motion, at 4, n.6.

1

COME ON DC AND LETS RIOT WITH THE REST OF THE NATION!!!!" Id. Defendant followed with the comment, "WISH I HAD THE FLAMES PLUGS WORKING ALREADY" Id.

A short time later, and in response to other comments on this same Facebook post, Defendant posted a link to a YouTube video entitled "*Minneapolis Police Station On Fire Amid Protest Of George Floyd's Killing*." Id. Defendant then posted a link to another YouTube video entitled "*George Floyd protest – Looters shot, cop cars smashed and fires rage as riots engulf Minneapolis*." Id. Defendant then added the comments "FUCK IT WE RIOTING" and "BURN IT DOWN," followed by a Google Maps link to the Metropolitan Police Department's Fourth District Station ("4D"). Id.

At 5:03 a.m. on May 29, 2020, Defendant posted an image with a black background with "FACT" written in red letters with the caption "I WILL BURN A 12 STATION DOWN SO QUICK IF THIS COMES TO MY TOWN.....PLEASE COME ON DC AND LETS RIOT WITH THE REST OF THE NATION!!!!" Exhibit Two. Defendant then commented on this post, stating "I KNOW THIS JUST TABLE TALK NOW, BUT RIOT DC N I ALREADY GOT A TORCH FOR REAL!!"

After making these Facebook posts, Defendant filled a plastic laundry detergent bottle with gasoline and transported it to the Metropolitan Police Department's ("MPD") 4th District Station ("4D"). Defendant made a video recording using his cell phone, which depicts him walking on the sidewalk, approaching 4D. Defendant states on the video: "[unintelligible] and I don't even give a fuck. They watchin' for real, and I still don't give a fuck. They see me and I still don't give a fuck." Defendant then set down the phone and leaned it against something so that the video shows a piece of sidewalk and the 4D station and sign.

Off-camera, the "click" of a lighter can be heard. Defendant's arm then comes into frame holding a laundry detergent container wrapped in a plastic bag. Defendant had stuffed what appeared to be paper towels into the spout of the container to serve as a wick, creating a destructive device.  Defendant did not secure the wick tightly enough to prevent gasoline vapors from escaping the container. Thus, when the lighter created a spark, the fumes ignited, causing a flash that burned Defendant and caused him to drop both the destructive device and the lighter.

After Defendant dropped the container, it quickly became engulfed in flames as he gathered his cell phone and attempted to flee from the scene. An MPD detective saw Defendant running from the fireball and gave chase. Defendant was quickly apprehended, and arresting officers noted the strong smell of gasoline on Defendant's clothes and person. Defendant was transported to Howard University Hospital following his arrest, where he remained under guard by MPD officers. While at the hospital, Defendant made several statements to officers. Specifically, Defendant made the following spontaneous admissions to Officer Koyejo:

- Defendant stated that he posted his intentions on Facebook and was surprised the officers hadn't seen it already.

- Defendant stated that he went to the gas station and personally filled the laundry detergent container with gasoline.

- Defendant stated that he should not be arrested because he did not burn anything down, and it could have been "way worse."

- Defendant stated, "That's what going on in Minneapolis. They were hitting it with the damn fire. . . . The whole country is doing this shit—am I not doing it?"

Defendant also made the following spontaneous admissions to Officer Kapres:

- Defendant stated "This is what you all deserve!"

- Defendant stated that he went to 4D because they wouldn't take a robbery complaint from him.

3

- Defendant stated "it's not like I ran up into your station, all I did was burn down your sign but I didn't even do that."

- Defendant stated "in Minneapolis the whole city did this. You guys have it real real good here."

- Defendants stated "y'all are OK, I didn't hurt anybody, I just wanted to make my video. I had to do it, I didn't have any other way."

## PROCEDURAL HISTORY

On June 11, 2020, Defendant was charged by criminal complaint and, on July 7, 2020, a federal grand jury sitting in the District of Columbia returned an Indictment charging Defendant with Receiving an Explosive in Interstate Commerce with the Intent to Unlawfully Damage or Destroy a Building, in violation of 18 U.S.C. § 844(d); Willfully Threatening to Damage or Dstroy a Building by Means of Fire or Explosive Using an Instrument of Interstate Commerce, in violation of 18 U.S.C. § 844(e); and Maliciously Attempting to Damage or Destroy a Building by Means of Fire or Explosive, in violation of 18 U.S.C. § 844(i). (Docket Entries 1, 12).

On October 19, 2020, Defendant moved this Court to Dismiss Count Two of the Indictment, which alleges that Defendant willfully threatened to damage or destroy MPD's 4D station by means of fire or explosive. Def. Motion. This Opposition follows.

## ARGUMENT

Defendant contends that Count Two must be dismissed because his Facebook posts constituted protected "political speech" and were, therefore, not a "true threat." Def. Motion, at 4-11. Defendant's motion fails to recognize that the issue raised in his motion is an issue of fact which is properly determined by the jury. Consequently, Defendant's motion should be denied without a hearing.

4

Chief Judge Howell considered an identical issue in United States v. Pettaway, where the defendant was charged with violating 18 U.S.C. § 844(e) for making a bomb threat. 297 F. Supp. 3d 137, 150-52 (2018). In Pettaway, the defendant argued that his bomb threat was protected by the First Amendment and, as such, the Section 844(e) count must be dismissed. Id. at 150. Chief Judge Howell noted that:

> Whether speech constitutes a "true threat" outside the scope of First Amendment protection thus turns on the speaker's mental state—whether the speaker acted with intent to commit unlawful violence or to place a victim in fear of the same. See Black, 538 U.S. at 359–60, 123 S.Ct. 1536; see also Elonis v. United States, [575] U.S. [723], 135 S. Ct. 2001, 2011–12, 192 L.Ed.2d 1 (2015) ("Federal criminal liability generally does not turn solely on the results of an act without considering the defendant's mental state.").

Id. In Pettaway, as in this case, the government was prepared to offer evidence at trial that showed that the defendant's intent was not to make a political statement, but rather to issue a "true threat." Id. at 151-52. As such, Chief Judge Howell ruled that "[t]o dismiss the defendant's indictment before the government can 'present its evidence at trial' would be inappropriate." Id. at 152 (citing United States v. Yakou, 428 F.3d 241, 247 (D.C. Cir. 2005).

Here, as in Pettaway, the United States intends to present evidence of Defendant's intent to commit the very acts that his Facebook posts said he was going to commit. On Facebook Defendant stated that he had a "torch" and was going to 4D to use his "torch" to "BURN A 12 STATION DOWN" because "FUCK IT WE RIOTING" and "BURN IT DOWN." Later that morning, Defendant built a "torch" out of gasoline, took it to 4D, and lit it afire. After his arrest, Defendant stated "this is what y'all deserve."

Defendant's motion seeks to have the Court weigh this evidence and determine whether Defendant uttered a "true threat" – in other words, Defendant is asking the Court to determine

5

whether Defendant had the intent to commit the crime charged. As the Court is well aware, however, it is black letter law that "the question of intent can never be ruled as a question of law, but must always be submitted to the jury." Morissette v. United States, 342 U.S. 246, 274 (1952) (emphasis added). Respectfully, whether the United States' evidence is sufficient to prove Defendant's criminal intent beyond a reasonable doubt is not properly before the Court—the law requires that question to be presented to the jury after it has heard all of the evidence. Id; Pettaway, 297 F. Supp. 3d at 150-52.

WHEREFORE, the United States respectfully submits that Defendant's "Motion to Dismiss" (Docket Entry 27) should be DENIED without a hearing.

           Respectfully submitted,

           MICHAEL R. SHERWIN
           Acting United States Attorney
           New York Bar No. 4444188

By:    */s/ James B. Nelson*
           JAMES B. NELSON
           D.C. Bar No. 1613700
           Assistant United States Attorney
           Federal Major Crimes Section
           555 4th Street, N.W.
           Washington, D.C. 20530
           (202) 252-6986
           james.nelson@usdoj.gov

## **CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that I caused a copy of this pleading to be served upon defense counsel via the Electronic Case Filing (ECF) system, on November 9, 2020.

By:    */s/ James B. Nelson*
JAMES B. NELSON
D.C. Bar No. 1613700
Assistant United States Attorney
Federal Major Crimes Section
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-6986
james.nelson@usdoj.gov

# **EXHIBIT ONE**








# **EXHIBIT TWO**



# **EXHIBIT THREE**

2019CRW 6820

## Superior Court of the District of Columbia
### CRIMINAL DIVISION

**AFFIDAVIT IN SUPPORT OF AN ARREST WARRANT**       **USW NO.:**

| DEFENDANT'S NAME: Pace, Jerritt | | | | | NICKNAME: Unknown | | ALIASES: Unknown | | CCN: 19-0284 | PDID: DC659799 |
|---|---|---|---|---|---|---|---|---|---|---|
| SEX: M | RACE: White | DOB: 11/27/1980 | HGT: 5'09 | WGT: 130 | EYES: Brown | HAIR: Black | COMPL: Light | SCARS, MARKS, TATOOS Right and Left Wrist, Forehead | | |

| DEFENDANT'S HOME ADDRESS: 5208 3rd Street NW Washington, D.C. 20011 | HOME TELEPHONE NUMBER: Unknown |
|---|---|
| DEFENDANT'S BUSINESS ADDRESS: None | CELLULAR TELEPHONE NUMBER: Unknown |
| COMPLAINANT'S NAME: | TELEPHONE NUMBER: On file |
| LOCATION OF OFFENSE: | DATE OF OFFENSE: 11/12/2019     TIME OF OFFENSE: 1034 |

**CAUTION AND MEDICAL CONDITIONS (CMC)**
Select a valid CMC code below for wanted person when using the caution indicator.

| X 00 = Armed and Dangerous | __ 25 = Escape Risk | __ 65 = Epilepsy | __ 01 = Other (Explain) |
|---|---|---|---|
| X 05 = Violent Tendencies | __ 30 = Sexually Violent Predator | X 70 = Suicidal | __ 90 = Diabetic |
| __ 10 = Martial Arts Expert | __ 50 = Heart Condition | __ 80 = Medication Required | __ 60 = Allergies |
| __ 15 = Explosive Expertise | __ 55 = Alcoholic | __ 85 = Hemophiliac | __ 20 = Known to abuse drugs |

**GIVE A BRIEF DESCRIPTION OF WHAT HAPPENED:**

On November 12, at approximately 1034 hours suspect Jerritt Pace brandished Taser and threatened to harm students and faculty members during a class that he was attending. Pace reportedly engaged in an argument with victim _____, then left the classroom in anger after being asked to take his seat by victim _____. Pace later returned to the classroom approximately one hour later and took his seat. Pace became irate with the _____ for refusing to allow him makeup a missed test. Pace reportedly produced a black, two pronged, handheld taser from his pocket, then began to show the taser to the class in a threatening manner. _____ dismissed the class and asked for a student to call for campus police. A few students remained in the room out of fear for _____ safety. _____ and the remaining students exited the classroom into the hallway and Pace followed. The students stood between Pace and _____, as Pace stood in front of the exit. Due to fear of an attack, _____ and the students returned to the classroom space and were able to close and barricade the door. Pace attempted to forcibly gain entry to the room as students held the door closed. Pace reportedly struggled to gain entry to the room while shouting threats and banging his head into the door. Pace shouted statements such as "I can use this to take you down," "I'm not afraid to use this," and "I'm not afraid of the police." _____ and the students continued to barricade themselves inside of the classroom due to Pace's actions. _____ stated that she feared for their safety. Officers arrived on scene shortly after and attempted to detain Pace. Pace fought with officers in attempts to escape but was eventually detained

KEE 12/30/19

**AFFIANT'S SIGNATURE:**
X _____

**TO: WARRANT CLERK**
PLEASE ISSUE A WARRANT FOR:

Jarrett Pace _____

Charge With: Simple Assault

SUBSCRIBED AND SWORN BEFORE ME THIS ___ 30th ___ DAY OF _Dec_. _____ 2019

_____
ASSISTANT UNITED STATES ATTORNEY

_____
(JUDGE) DEPUTY CLERK) SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

Form CD(17)-1050                       Revision Date: 11-29-06                       Page 1

2019 CRW 6820

# Superior Court of the District of Columbia
## CRIMINAL DIVISION

**AFFIDAVIT IN SUPPORT OF AN ARREST WARRANT**       **USW NO.:**

| DEFENDANT'S NAME: Pace, Jerritt | | | | | NICKNAME: Unknown | | ALIASES: Unknown | CCN: 19-0284 | PDID: DC659799 |
|---|---|---|---|---|---|---|---|---|---|
| SEX: M | RACE: White | DOB: 11/27/1980 | HGT: 5'09 | WGT: 130 | EYES: Brown | HAIR: Black | COMPL: Light | SCARS, MARKS, TATOOS Right and Left Wrist, Forehead | |

| DEFENDANT'S HOME ADDRESS: 5208 3rd Street NW Washington, D.C. 20011 | HOME TELEPHONE NUMBER: Unknown |
|---|---|
| DEFENDANT'S BUSINESS ADDRESS: None | CELLULAR TELEPHONE NUMBER: Unknown |
| COMPLAINANT'S NAME: | TELEPHONE NUMBER: On file |
| LOCATION OF OFFENSE: | DATE OF OFFENSE: 11/12/2019   TIME OF OFFENSE: 1034 |

**CAUTION AND MEDICAL CONDITIONS (CMC)**
Select a valid CMC code below for wanted person when using the caution indicator.

X 00 = Armed and Dangerous        __ 25 = Escape Risk                      __ 65 = Epilepsy                      __ 01 = Other (Explain)
X 05 = Violent Tendencies         __ 30 = Sexually Violent Predator   X 70 = Suicidal                      __ 90 = Diabetic
__ 10 = Martial Arts Expert       __ 50 = Heart Condition                __ 80 = Medication Required   __ 60 = Allergies
__ 15 = Explosive Expertise       __ 55 = Alcoholic                          __ 85 = Hemophiliac              __ 20 = Known to abuse drugs

**GIVE A BRIEF DESCRIPTION OF WHAT HAPPENED:**

on scene. Metropolitan Police Department officers arrived on scene shortly after but declined to transport pace due to self-inflicted injuries sustained during the incident. Pace was subsequently transported to Washington Hospital Center under an FD-12 (Application For Emergency Hospitalization). Later that day, Pace was released from the hospital and reportedly sent           a threatening email that contained statements such as "you have no idea how cheap and easy it would be to have you disappear from the world."

Subsequently, all future in-person classes were moved to a different location and later cancelled due to fear of retaliation or future incidents involving Pace.

Pace is a known mental health consumer and is believed to have access to other dangerous weapons.

Your affiant respectfully requests the District of Columbia Superior Court issue an arrest warrant for the above described offenses against Jerritt Pace.

**AFFIANT'S SIGNATURE:**
x _____

**TO: WARRANT CLERK**
PLEASE ISSUE A WARRANT FOR:

Jarrett Pace _____

Charge With: Simple Assault

SUBSCRIBED AND SWORN BEFORE ME THIS
30th DAY OF _____. 2019

_____           _____
ASSISTANT UNITED STATES ATTORNEY           (JUDGE) DEPUTY CLERK) SUPERIOR COURT OF THE
                                                                          DISTRICT OF COLUMBIA

Form CD(17)-1050                     Revision Date: 11-29-06                     Page 1

# **EXHIBIT FOUR**

## SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
## CRIMINAL DIVISION
## UNITED STATES
## VS
## PACE, JERRITT JEREMY
CCN #: **20023098**
Arrest Number: **492003986**

The event occurred on **02/07/2020** at approximately **11:20** at **1775 PENNSYLVANIA AVENUE NW, WASHINGTON, DC 20006**

On 02/07/2020 at approximately 11:20am, while operating a police bicycle in full police uniform in the area of 1776 Pennsylvania Avenue NW, Officer Drew Peterson #2228 "AO" was conducting routine patrol on the 1700 block of Pennsylvania Ave. NW for an official motorcade departure from the White House. At this time, the US Secret Service motorcade motorcycles were headed westbound on Pennsylvania Ave. with lights and sirens activated, and were crossing the 18th street intersection when AO saw a male (later identified as Jerritt Pace "D1") walking slowly in the crosswalk southbound across Pennsylvania Ave. toward the south east corner of 18th St. and Pennsylvania Ave. AO saw a US Secret Service motorcycle officer from the motorcade stop next to the male and point south, appearing to tell the male to get on the sidewalk. After the first motorcycle proceeded along the motorcade route, AO saw the male begin to walk back onto the street in a northbound direction, and he appeared to be staring east down Pennsylvania Ave. toward the rest of the motorcade heading west. At this time, another US Secret Service motorcycle officer stopped next to the individual and pointed south, appearing to tell the man to stay back on the sidewalk. The officer then proceeded along the motorcade route and the male began walking quickly toward the middle of the road, with additional motorcade vehicles approaching him at a high rate of speed. AO began to ride my bicycle quickly toward the male, who was nearly in the middle of Pennsylvania Ave. before another officer (Brandon Deveny #2326 "AAO2") grabbed him and started walking him south toward the sidewalk. AO then dropped my bicycle and assisted AAO2 in escorting the male to the sidewalk. AAO2 then placed the male in handcuffs while the remainder of the motorcade drove by. At that time the male was placed under arrest and AO conducted a search of the male incident to arrest. Another officer arriving on scene (Officer Adam Miller #2064 "AAO1") then took custody of the male along with AAO2 while AO conducted a search of the male's belongings. The male became verbally combative, screaming obscenities at officers when asked for biographical information. As AO continued searching his items, the male began attempting to pull away from the other officers attempting to pull out of his handcuffs. AAO1 and AAO2 attempted to move the male to a spot that he could sit but the male resisted and dropped to the ground, yelling and kicking at the officers who were giving commands to the male to stay seated. The male was then placed in leg restraints and continued to resist officers who were attempting to have the male sit upright. AO then assisted the officers in moving the male to the back of a patrol wagon, where he refused to enter. The male fell to the ground and began attempting to hit his head on the pavement, inciting the assistance of several other officers to assist him into the patrol wagon. After placing the male in a seated position in the back of the patrol wagon, the male began banging his head against the metal siding of the patrol wagon and spitting on the ground. At that time we applied a spit mask to the male and called for an ambulance to respond to the scene and the male was held by officers in the back of the wagon until it arrived so that no further damage could be done. Upon arrival of medic 23, officers assisted the male from the rear of the wagon onto the ambulance stretcher where he was restrained futher with straps. Medic 23 then transported the male to Georgetown Medstar Hospital with AAO1 and AAO2 assisting in the transport.

Upon arrival at Georgetowm Medstar Hospital AAO1 and AAO2 followed the male to room 16 in the ER. The male was continuing to scream obscenities at officers and medical staff. The male continuously tried to slam his head against the bedrail of the gurney he was strapped to. Multiple officers had to hold the male down as to not allow him to hurt himself. During this time the male spit through his spit shield into the eye of Special Police Officer Misty Covington #50 of the Georgetown Medstar Hospital. A second spit shield was put on the male at this time. Hospital staff applied additional restraints onto the male's ankles and wrists due to violent actions. While yelling the male stated "I'm going to bash my head in". AAO1 asked what that meant and if the male wanted to kill himself. The male stated, " Yes, I want to kill myself, im going to hack my brain apart tonight." The male was sedated my medical stafff and remained in restraints. Crime Scene responded for a syringe found in the male's bag for testing yielding negative results. T529 Failure to yield to emergency vehicle was issued.

The event and acts described above occurred primarily in the District of Columbia and were committed as described by defendant(s) listed

Pg. 1 of 2

in the case caption.

Subscribed and sworn before me this **02/07/2020**

| **PETERSON, DREW / U15237 / U15237 (02/07/2020) E-SIGNATURE** | | **ALS, RON / U08220 (02/07/2020) E-SIGNATURE** |
|---|---|---|
| Police Officer / Badge# / CAD# | Unit | Witness / Deputy Clerk |

| **PETERSON, DREW / U15237 / U15237** | **ALS, RON / U08220** |
|---|---|
| Printed Name of Member / Badge# / CAD# | Printed Name of Witness / Deputy Clerk |

The foregoing statement was made under penalty of criminal prosecution and punishment for false statements pursuant to D.C. Code 22-2405