UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | No. 20-cr-104 (RC) |
| : | |
| JERRITT PACE, : | |
| : | |
| : | |
| Defendant. : | |

GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits its Sentencing Memorandum as to the defendant Jerritt Pace (the "defendant").

FACTUAL BACKGROUND

*Factual Proffer*

On or about May 29, 2020, in the early morning hours, the defendant filled a plastic laundry detergent bottle with gasoline and made a makeshift paper wick to fit on top of the bottle ("improvised device"). After creating the improvised device, around 6:00 a.m. on May 29, 2020, the defendant carried the device to the front sidewalk of the Metropolitan Police Department's 4th District Station located at 6001 Georgia Avenue NW, in Washington, D.C. He lit the device and the device fell to the sidewalk, where it burned for a short time. The defendant fled the scene, but was apprehended shortly thereafter. The defendant filmed himself on his cell phone shouting at the police station, carrying the device, and ultimately lighting the device on fire before the device fell. After his arrest, the defendant admitted to making the improvised device.

The improvised device made by the defendant on or about May 29, 2020, was determined by the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) to be a "destructive device"

as defined by 26 U.S.C. § 5845(f); ATF classified the improvised device as a designed weapon and improvised incendiary bomb. This improvised destructive device qualified as a "firearm" under 26 U.S.C. § 5845(a)(8). Because the improvised device met the definition of a firearm under 26 U.S.C. § 5845(a)(8), it was subject to the registration requirements of 26 U.S.C. §§ 5821 and 5822, respectively. The defendant did not adhere to these requirements when he made the improvised destructive device.

## THE DEFENDANT'S HISTORY AND CHARACTERISTICS

The defendant's criminal history is lengthy and is responsible for a substantial criminal history score and category. The government agrees with Probation that his criminal history score is 13, which places him into a criminal history category of VI. (ECF No. 42 ¶¶ 58-60). While the defendant's criminal history category is the most severe category, his history is largely comprised of misdemeanor and non-violent offenses. A summary of his criminal history convictions which count toward his total criminal history score can be found below:

| Date | Offense | Jurisdiction | Case No. | Sentence |
|---|---|---|---|---|
| 11/25/2019 | Petit Larceny | Fairfax County, VA | GC19207259-00 | 180 days, suspend all, 12 months of Probation<br><br>[4A1.1(c)]<br>**1 point**<br><br>[4A1.1(d)]<br>**+2 points** |
| 7/27/2018 | Attempted Threats | Washington, D.C. | 2017-CMD-13805 | Time served – 13 days<br><br>[4A1.1(c)]<br>**1 point** |

| Date | Offense | Location | Case Number | Sentence |
|---|---|---|---|---|
| 3/28/2017 | Possession of Controlled Substance | Spotsylvania County, VA | CR14000511-00 | Revoked and resentenced, 4 years, with 3 years and 11 months suspended<br><br>[4A1.1(b)]<br>**2 points** |
| 10/24/2014 | Petit Larceny, 3rd or Subsequent Offense | Fredericksburg, VA | CR13001128-00 | 36 months, suspend 30 months<br><br>[4A1.1(b)]<br>**2 points** |
| 5/1/2013 | Trespass After Forbidden | Richmond County, VA | GC13002195-00 | 12 months, suspend 11 months<br><br>[4A1.1(c)]<br>**1 point** |
| 11/10/2015 | Theft Second Degree | Washington, D.C. | 2013 CMD 2115 | 15 days, suspend all, 12 months of probation<br><br>[4A1.1(c)]<br>**1 point** |
| 8/12/2013 | Possession with the Intent to Distribute | Spotsylvania County, VA | CR13789-00 | 10 years incarceration, all suspended<br><br>[4A1.1(c)]<br>**1 point** |
| 1/29/2013 | Shoplifting | Washington, D.C. | 2012 CMD 5383 | 10 days incarceration<br><br>[4A1.1(c)]<br>**1 point** |
| 9/15/2011 | Destruction of Property | Arlington County, VA | GC113362-00 | 6 months incarceration, 5 months suspended<br><br>[4A1.1(c)]<br>**1 point** |

| 12/30/2004 | Counterfeit U.S. Currency with the Intent to Defraud | Eastern District of Texas | 01-cr-49-001 | 21 months of incarceration, and an additional 6 months on a supervised release violation<br><br>[4A1.1(a)]<br>[4A1.1(k)]<br><br>**3 points** |
|---|---|---|---|---|
| | | | | **Total:**<br><br>**13 points** |

## SENTENCING FACTORS

Pursuant to 18 U.S.C. § 3553(a), the court shall impose a sentence that is sufficient, but not greater than necessary to comply with the purposes of the statute which include the need for the sentence: (A) to reflect the seriousness of the offense(s), to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training. In addition, the statute requires the court to consider a number of factors in determining the appropriate sentence: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the purposes of the statute; (3) the kinds of sentences available (4) the sentencing guidelines; (5) policy statements; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to any victims.

## ARGUMENT

The government believes that a sentence of 48 months of incarceration, followed by three years of supervised release, is an appropriate sentence and is consistent with the plea agreement. Although such a sentence would be a variance below the guideline range, the government believes

that an application of the facts of this case to the statutory factors supports this recommendation, particularly when considering the defendant's mental health history. It should also be noted that Probation agrees with the government's allocution on this basis. (ECF No. 43).

### *The Seriousness of the Offense*

The charge in this case is indeed serious. Although there is mitigation by way of strong emotion likely exacerbated by mental health struggles, the defendant took several steps necessary to create a makeshift destructive device out of a laundry detergent bottle and wick. He then took that device to a sidewalk in front of a police station on a busy road after daybreak and lit the device on fire. Thankfully, no one was hurt in the process and little damage was done, but there was potential for significant damage to the defendant, along with property and any others who may have come across his path. Further, the defendant's decision to make and use this device outside the bounds of regulation contemplated by the National Firearms Act is an example of why such devices are regulated: they are inherently dangerous and can bring harm to those who are not trained or equipped to handle such devices.

### *The Defendant's History and Characteristics*

The government has noted the defendant's criminal history above. The defendant has been in and out of the criminal justice system for his entire adult life. To the extent there is any credit to afford the defendant, his criminal history score is made up almost exclusively of non-violent, drug, petty or misdemeanor convictions. A review of the underlying facts of many of those cases demonstrate a connection to mental health or drug use; while these connections do not excuse his conduct in those cases, they do help provide context into what has been an unfortunately consistent journey through the criminal justice system. It is clear to the government that if the defendant is going to have any chance at avoiding recidivism, he must maintain both substance and mental

health treatment, or else he will almost certainly be before another Court, or indeed this one, shortly after his release.

Probation documents a score of both physical and mental health conditions for the defendant in the PSR. (ECF No. 42 ¶¶ 97-121). Although the government expects the defense to expound upon the defendant's challenges with physical and mental health in its memorandum, the government notes for the Court that but for the defendant's serious struggles with mental health, and to a lesser extent drug abuse, the government would not be allocuting for this reduced sentence. While the defendant possessed the requisite *mens rea* for the dangerous offense, the conduct is undoubtedly mitigated by his severe mental health struggles before and during the offense. Accordingly, a varied sentence below the guidelines is appropriate.

*Respect for the Law, Protection of the Public, and Deterrence*

A sentence of 48 months of incarceration followed by three years of supervised release promotes respect for the law and acts as a deterrence for future crimes. In total, his four years of incarceration will be the longest consecutive time the defendant will have served in custody—far longer than the majority of his sentences in any of his other cases. His sentence will also serve as a general deterrent to other persons who may think to build or use their own improvised destructive devices for any reason.

Although the government recommends a below-guidelines sentence, we nevertheless are compelled to request three years of supervised release. It is incumbent, upon release, that the defendant have a structured environment that will enable him to rehabilitate. It is especially important for this defendant to continue mental health and substance abuse treatment while he is on supervised release. The government also hopes that the defendant will take advantage of any occupational training programs that can be offered by both Probation and the BOP as documented

in the PSR. (ECF No. 42 ¶¶ 159-160). This may very well be the defendant's last opportunity to change the trajectory of his life. The government hopes that he will do so, but will remain vigilant should he choose to misuse any downward variance given by the Court.

Ultimately, a sentence of 48 months with three years of supervised release would be both a tough and fair sentence in light of the foregoing circumstances.

        Respectfully submitted,

        CHANNING D. PHILLIPS
        Acting United States Attorney
        D.C. Bar No. 415793

By:    /s/Christopher A. Berridge
        Christopher A. Berridge
        GA Bar No. 829103
        Assistant United States Attorney
        555 4th Street, N.W., Room 4124
        Washington, D.C. 20530
        (202) 252-6685
        Christopher.Berridge@usdoj.gov